**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DEBORAH A. GLOVER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FEIN, SUCH, KAHN & SHEPARD, P.C.,** ***et al.,***<br><br>**Defendants.** | **Civil Action No. 2:23-cv-22282-MEF-CLW**<br><br>**OPINION** |

**CATHY L. WALDOR, U.S.M.J.**

## I. Introduction

This matter is before the Court on the motion of defendant N.A.R., Inc. d/b/a North American Recovery ("NAR") seeking to compel arbitration.[1] ECF No. 6. The motion is fully briefed and has been referred to the undersigned by the Honorable Michael E. Farbiarz. The Court has carefully considered the parties' submissions and decides the matter without oral argument per FED. R. CIV. P. 78(b) and L. CIV. R. 78.1. For the reasons stated below, NAR's motion is **GRANTED**.

## II. Background

The relevant facts, as set forth in plaintiff Deborah Glover's ("Glover") complaint (the "Complaint, ECF No. 1-1) and NAR's moving papers,[2] are as follows. In 2014, Merrick Bank ("Merrick") issued Glover a credit card, upon which Glover later defaulted. Merrick assigned Glover's account to NAR, a collection agency. In July 2018, NAR filed suit in state court and obtained a default judgment (the "Judgment") against Glover. NAR then garnished Glover's

---

[1] NAR's motion also passingly seeks dismissal of Glover's complaint. This portion of the motion has been denied, *see* ECF No. 25, and is excluded from the scope of this opinion and its corresponding order.

[2] Glover does not dispute the following facts as stated in NAR's papers.

wages until the Judgment was satisfied in 2020. The present action centers on the allegation that defendants in October 2022 sent Glover a letter purporting to collect the same debt that had already been paid through satisfaction of the Judgment. *See* Complaint at ¶¶ 7-14; ECF No. 6-13 at 1-4. Glover sues under the common law and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (the "FDCPA"). *See generally* Complaint.

The instant motion arises from an arbitration agreement contained in the cardholder agreement entered between Merrick and Glover.[3] The Agreement provides:

> **Agreement to Arbitrate Disputes and Class Action Waiver.**
>
> This section is an agreement to arbitrate disputes ("Arbitration Agreement") that may arise as a result of the Agreement or your Account. Read this Arbitration Agreement carefully. You may reject this Arbitration Agreement by notifying us in writing within 60 days using the procedure set forth at the end of this section. If a dispute arises that is covered by this Arbitration Agreement, you will be required to resolve the dispute through Binding Arbitration if you or we request Binding Arbitration as set forth herein. This means that you will not be able to have the dispute settled by trial or before a jury or to participate in a class action in court or a class action or consolidated arbitration. Other rights that you would have if you went to court may not be available or may be more limited in arbitration, including your right to appeal.
>
> In consideration for our willingness to provide you with an Account as set forth in the Agreement, you and we agree as follows:
>
> Any claim, dispute or controversy ("Claim") by either you or us against the other arising from or relating in any way to the Agreement or your Account, except for the validity, scope or enforceability of this Arbitration Agreement, shall, at the demand of any party, be resolved by Binding Arbitration. . . .
>
> This agreement to arbitrate Claims includes all controversies and claims of any kind between us. It also includes any disputes you have with our . . . assignees . . . .

[3] The cardholder agreement states that by signing or using the credit card, Glover was agreeing to the terms thereof. ECF No. 6-6 at ¶ 1. Glover's statements indicate she subsequently used the card. ECF No. 6-5. Portions of the cardholder agreement not at issue here were later revised. *See* ECF No. 6-7.

> The Claims covered by this agreement to arbitrate include, without limitation . . .
>
> - Any disputes arising from the collection of amounts you owe in connection with your Account . . . .
>
> **RIGHT TO REJECT ARBITRATION**
>
> **YOU HAVE THE RIGHT TO REJECT THIS AGREEMENT TO ARBITRATE, BUT YOU MUST EXERCISE THIS RIGHT PROMPTLY. If you do not wish to be bound by this agreement to arbitrate, you must notify us in writing within 60 days after the date your Account is opened.**

*See* ECF No. 6-6 at ¶ 24 (the "Agreement") (emphases in original). Glover did not reject the Agreement.

The cardholder agreement also permits Merrick to "sell, assign, or transfer this Agreement or the Account or the Deposit Account, or any portion thereof or any rights to collect money thereunder, at any time and without your prior consent." ECF No. 6-6 at ¶ 28. The attendant assignment agreement between Merrick and NAR provides that Merrick "hereby transfers, assigns and sets over to NAR, [Merrick]'s claims and demands against all debtors assigned together with all of [Merrick]'s rights, title and interest therein, and the demands represented thereby, and all rights, of action accrued or to accrue." *See* ECF No. 6-10 at Sec. 6.

Glover filed suit in state court. NAR timely removed the case and responded to the complaint by filing the instant motion, which is ripe for resolution.

## III. <u>Legal Standard</u>

Under the Federal Arbitration Act (the "FAA"), binding arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "If a valid arbitration clause exists and the dispute falls within the substantive scope of that clause, [a court] must compel the parties to arbitrate the

dispute." *Microbilt Corp. v. Chex Sys. (In re Microbilt Corp.)*, 588 F. App'x 179, 180 (3d Cir. 2014) (citing cases). The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[C]ourts apply a 'presumption of arbitrability' when construing the scope of arbitration clauses", *Lloyd v. MBNA Am. Bank, N.A.*, 27 F. App'x 82, 85 (3d Cir. 2002) and "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000) (citing cases).

## IV. Analysis

On their face, Glover's claims appear to fall within the scope of a valid arbitration agreement, thus rendering them arbitrable. *See Microbilt*, *supra*. Glover objects to NAR's request to compel arbitration on three grounds: that the Agreement was merged into the Judgement, thus extinguishing NAR's arbitration rights contained in the Agreement; that the Agreement does not encompass Glover's present claims; and that NAR waived its right to arbitrate by suing in state court. The Court addresses these in turn.

### a. Merger

Glover's first argument grows from the doctrine of merger. She contends NAR's right to arbitrate the present claims was extinguished when NAR obtained the Judgment against her. This is because, the argument goes, under the merger doctrine, "[w]hen a claim on a contract is reduced to judgment, the contract between the parties is voluntarily surrendered and canceled by merger in the judgment and ceases to exist." ECF No. 10 ("Opp.") at 12 (quoting 46 Am. Jur. 2d Judgments § 438 (2021)). After such a merger, therefore, "the prevailing party has only those rights as are set forth in the judgment itself and the contract no longer serves any purpose except

as evidence supporting the judgment." *Id.* (quoting Am. Jur. 2d). In support of this argument, Glover cites a single state court case addressing merger in the context of mortgage foreclosure statutes. *See id.* at 12-13 (discussing *Virginia Beach Federal v. The Bank of New York/National Community Div.*, 99 N.J. Super. 181 (App. Div. 1997)).

Glover's argument rests on a misconstruction of the merger doctrine. The construal adopted by federal courts is more limited and, as most immediately relevant, distinguishes between the extinction of a contract debt versus that of an underlying contract:

> [t]he doctrine of merger provides that a debt created by contract merges with a judgment entered on that contract, so that the contract debt is extinguished and only the judgment debt survives. The "merger" of the contract debt with the judgment debt does not extinguish the underlying contract itself. This would inappropriately weaken rights or destroy identities which the prevailing party had in his original cause. Rather than extinguish the *contract*, merger merely extinguishes the *claim* that was adjudicated from that contract, and replaces that claim with the final judgment.

*NML Capital v. Republic of Argentina*, 2015 U.S. Dist. LEXIS 73521, at *58-59 (S.D.N.Y. June 5, 2015) (citations and quotation marks omitted); *see also Morrison v. Midland Funding, LLC*, 2021 U.S. Dist. LEXIS 115432, at *6 (W.D.N.Y. June 21, 2021) ("Although merger may extinguish a *contract debt* when it merges with a judgment debt, the underlying *contract* itself is not extinguished. Rather, when an individual claim is adjudicated, the merger principle merely extinguishes that specific claim that was adjudicated and replaces it with a final judgment.") (citations omitted); *Muschetto v. Kenosian & Miele, LLP*, 2017 U.S. Dist. LEXIS 224131, at *7-8 (C.D. Cal. Oct. 23, 2017) ("The merger doctrine precludes a prior claimant from reasserting claims after a judgment is issued as to those claims. It does not apply . . . to extinguish even those terms of a contract separate from those that resulted in a prior judgment.") (citing *Alarcon*

*v. Vital Recovery Servs., Inc.*, 2016 U.S. Dist. LEXIS 38925, 2016 WL 1162664, at *2 (S.D. Cal. Mar. 24, 2016)).

Glover's position, unlike NAR's, finds little support in the federal case law. Moreover, federal courts consistently reject the exact argument Glover posits here. *Morrison*, for example, wrote that

> regardless of whether an underlying court judgment merges with and extinguishes an underlying contractual debt, the contract itself and its obligations—including the ability to compel the arbitration of subsequent claims—do not similarly merge. If Plaintiff's merger theory was correct, contracts would be rendered meaningless whenever a party breached any portion of an agreement and the other party obtained a judgment on such breach. That is not the intention of the merger doctrine.

2021 U.S. Dist. LEXIS 115432, at *8-9 (citing *Orix Credit All., Inc. v. Horten*, 965 F. Supp. 481, 485 (S.D.N.Y. 1997)); *see also Muschetto*, 2017 U.S. Dist. LEXIS 224131, at *7-8 ("Muschetto has brought suit against Defendants based on their alleged debt collection practices in connection with [the Defendants'] state court judgment. Accordingly, the [merger] doctrine does not bar Defendants from seeking to enforce the arbitration agreement."). To accept Glover's argument "would inappropriately weaken rights . . . which [NAR] had in [its] original cause", *NML Capital*, *supra*, as well as run counter to "the intention of the merger doctrine". *Morrison*, *supra*.[4]

NAR's position on the question of merger is considerably more logical and better supported than that forwarded by Glover. The Court therefore rejects Glover's argument that it should not compel arbitration because NAR's Agreement-vested arbitration rights were extinguished by way of the Agreement's merger into the Judgment.

---

[4] *Morrison* added that "[t]he doctrine of merger is based primarily on the policy of preventing multiple lawsuits based on the *same cause of action*—thus, it is 'closely related' to the doctrine of res judicata." 2021 U.S. Dist. LEXIS 115432, at *8-9 (citing *Orix*, 965 F. Supp. at 485 (emphasis added in *Morrison*)).

**b. Scope of Arbitration Agreement**

Glover next argues that because the Agreement does not expressly mention court judgments, this dispute falls outside of the Agreement's scope. *See* Opp. at 13-14. Glover spends little time developing this argument, for good reason — it is a non-starter. As noted, the Agreement covers "any claim, dispute or controversy . . . relating in any way to the Agreement or your Account"; and elsewhere, "all controversies and claims of any kind between us"; and still elsewhere, "[a]ny disputes arising from the collection of amounts you owe in connection with" the account. *See* Agreement. Particularly considering that arbitration agreements must be construed broadly and in favor of arbitrability, *see Moses H. Cone*, *supra*, Glover's argument is meritless. The present dispute plainly "relat[es] in [some] way" to Glover's account; it is plainly a "controvers[y] . . . of [some] kind between" Glover and Merrick's assignee; and perhaps most patently, it is a "dispute[] arising from the collection of amounts [Glover] owe[d] in connection with" her account.

As noted by the Third Circuit in *Flaghouse, Inc. v. Prosource Dev., Inc.*, 528 F. App'x 186 (3d Cir. 2013), "agreements to arbitrate with 'arising out of' language are typically construed broadly in favor of arbitration." *Id.* at 190 (citing *EPIX Holdings Corp. v. Marsh &McLennan Cos.*, 410 N.J. Super. 453, 982 A.2d 1194, 1205 (N.J. Super. Ct. App. Div. 2009)). To this end, federal courts addressing the same argument raised here — that FDCPA claims do not relate to an agreement on an account that gave rise to an attempt to collect an underlying debt — routinely reject it. *See, e.g.*, *Morrison*, 2021 U.S. Dist. LEXIS 115432, at *10-11 (rejecting argument in view of "numerous courts [to] have found such FDCPA claims in similar circumstances properly arbitrated in accordance with the underlying agreement") (citing, *e.g.*,

*Brown v. Midland Credit Mgmt., Inc.*, 20-CV-4239, 2020 U.S. Dist. LEXIS 158206, 2020 WL 5117975, at *2 (S.D.N.Y. Aug. 31, 2020) (FDCPA claims within scope of arbitration provision because alleged improper collections process on underlying debt "plainly 'relates' to the Account Agreement")); *Vasquez v. Nat'l Enter. Sys.*, 2021 U.S. Dist. LEXIS 72320, at *6-7 (D.N.J. Apr. 14, 2021) ("Plaintiff's FDCPA claim arises from Defendant's attempts to collect on the outstanding balance on her Student Loan, which she obtained by signing the Note. The Note's arbitration provision encompasses 'any claim[] . . . that arises from or relates in any way to the Note,' . . . . Plaintiff's FDCPA claim falls into [this category] and must therefore be arbitrated.") (citing cases). Glover cites no authority in support of her passing argument to the contrary, which fails.

**c. <u>Waiver</u>**

Glover next asserts NAR waived its right to arbitrate when it filed the state court action that resulted in the Judgment. This argument is based on the notion that courts may "refuse to enforce an arbitration agreement where a 'party has acted inconsistently with the right to arbitrate'", *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 117 (3d Cir. 2012) (quoting *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 208, 53 V.I. 901 (3d Cir. 2010)), which Glover contends NAR did by filing the state court action. "[T]he party arguing waiver of arbitration 'bears a heavy burden of proof.'" *Lott Constructors, Inc. v. Jackson Twp. Bd. of Educ.*, 1992 U.S. Dist. LEXIS 12891, at *9 (D.N.J. Aug. 12, 1992) (quoting *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990); citing *Frye v. Paine, Webber, Jackson & Curtis, Inc.*, 877 F.2d 396, 398 (5th Cir. 1989), *cert. denied*, 494 U.S. 1016, 108 L. Ed. 2d 493, 110 S. Ct. 1318 (1990)). This burden requires Glover to demonstrate NAR's actions "evince an intent to 'knowingly relinquish the right to arbitrate by acting inconsistently with that right."

*Zephyr Fluid Sols., LLC v. Scholle IPN Packaging, Inc.*, 2023 U.S. Dist. LEXIS 20890, at *5 (D. Del. Feb. 7, 2023) (quoting *Zenon v. Dover Downs, Inc.*, 2022 U.S. Dist. LEXIS 112798, 2022 WL 2304118, at *2 (D. Del. June 27, 2022)). For numerous reasons, Glover cannot meet this bar.

First, the thrust of Glover's argument is that NAR waived its right to arbitrate the instant claims by filing a collection action in 2018.[5] Such claims did not arise until 2022, when Glover received the letter giving rise to the present action. *See* Complaint at ¶ 14. It is a stretch, to say the least, that NAR "knowingly relinquish[ed]" its right to arbitrate by dint of filing an action in 2018, where that right did not come into existence until four years later. Indeed, "it is difficult to waive rights that do not exist." *United States v. Hargrove*, 494 F. Supp. 22, 24 (D.N.M. 1979). Yet this is precisely what Glover asks the Court to infer NAR did. Particularly given the burden referenced above, the Court declines to do so.

As a related but no less compelling point, "[o]nly prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate." *Yeransian v. Markel Corp.*, 2017 U.S. Dist. LEXIS 119280, at *13 (D. Del. July 31, 2017) (citing *Commercial Arbitration* § 23:6 (Aug. 2016 Update)); *cf. Doctor's Assocs. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997) ("[F]inding waiver where a party has previously litigated an unrelated yet arbitrable dispute would effectively abrogate an arbitration clause once a party had litigated *any* issue relating to the underlying contract containing the arbitration clause."). Here, Glover's instant claims involve vastly different legal and factual issues as those underpinning NAR's collection action and therefore fall safely outside the scope of any potential waiver.

---

[5] NAR makes much of the fact that unlike the defendants in Glover's cited cases who participated in intensive litigation before seeking to compel arbitration, NAR's only activity before *this Court* has been to file the instant motion as a response to Glover's complaint. This argument, while right on the law, is a non-sequitur. As noted, Glover has argued NAR waived its right to arbitrate by bringing the state court action; not based on its activities in this litigation.

Further, Glover writes that waiver occurs where a defendant "voluntarily choos[es] to file a court action *when there is an arbitration alternative available to it*." Opp. at 14 (emphasis added); *cf. Williams v. FCA US LLC*, 2018 U.S. Dist. LEXIS 87184, at *17 n.5 (E.D. Mich. May 24, 2018) ("Prior to waiving their right to a judicial forum, parties must have available the alternative dispute procedure they are substituting for the judicial forum.") (citing cases). Here, the Agreement mandates arbitration before the American Arbitration Association, which in turn does not entertain arbitration for collection of consumer debts. *See* American Arbitration Association, *Consumer Arbitration Fact Sheet: Debt Collection Moratorium*, https://go.adr.org/consumer-arbitration (last visited July 17, 2024). Thus, NAR did not have an available arbitration alternative when it filed the state court action. This is another factor weighing against a finding of waiver.[6]

Glover's cited cases do not compel a contrary result. She relies on *Cain v. Midland Funding*, 452 Md. 141 (2017), where the Maryland Court of Appeals expressly found the defendant "had the option to arbitrate its 2009 collection action under its contract with" the plaintiff. *See id.* at 151-57. As noted, no such option existed here. Moreover, as observed in *Collins v. Discover Fin. Servs.*, 2018 U.S. Dist. LEXIS 75750 (D. Md. May 4, 2018), "*Cain* is inapplicable to this case. As this Court has recognized several times since *Cain* was decided in 2017, *Cain* involved compelling arbitration under the Maryland Uniform Arbitration Act, not the FAA." *Id.* at *6 (citing *Castellanos v. Mariner Fin., LLC*, Civil Action No. MJG-17-3168, 2018 U.S. Dist. LEXIS 8593, 2018 WL 488725, at *2 (D. Md. Jan. 19, 2018)). The decision in *Nelson v. Liberty Acquisitions Servicing LLC*, 2016 UT App 92 (2016) rested upon an interpretation of

[6] Glover raises an argument arising from the Agreement's provision that NAR "will not demand arbitration pursuant to this agreement to arbitrate in connection with any individual Claim that you [*i.e.*, Glover] properly file and pursue in a small-claims court". *See* Agreement. This is irrelevant, as the purported small claims action was filed by NAR, not by Glover.

related litigations peculiar to Utah state law, *see id.* at ¶¶ 15-20, and thus is inapplicable here. Glover's sole federal case, *Novic v. Midland Funding, LLC*, 271 F. Supp. 3d 778 (D. Md. 2017), was vacated and remanded on appeal. *See Novic v. Credit One Bank*, 757 F. App'x 263 (4th Cir. 2019).

Glover's other cited matter, *Principal Invs., Inc. v. Harrison*, 132 Nev. 9 (2016), is particularly instructive by way of contrast. There, after the defendant debt collector obtained default judgments, the plaintiffs sued primarily to have those judgments be invalidated and to recover the sums obtained thereunder. *See id.* at 12. The court stated the above principle that waiver of arbitration rights requires that the same issues had been litigated in the prior matter and proceeded to distinguish cases similar to this one, writing that on the facts present there, "[t]he claims the named plaintiffs have asserted in district court arise out of, and are integrally related to, the litigation [the defendant] conducted in justice court." *See id.* at 21. This case plainly falls on the other side of the ledger.

In short, Glover fails on numerous grounds to meet her burden of demonstrating that NAR waived its right to arbitrate. The Court therefore rejects her waiver argument.

## V. **Conclusion**

For the reasons stated, the Court finds no merit to Glover's objections to NAR's request to compel arbitration of this matter, which in turn will be granted.[7] An appropriate order follows.

Dated: July 24, 2024

*s/ Cathy L. Waldor*
Cathy L. Waldor, U.S.M.J.

[7] "[O]rders granting this type of motion merely suspend the litigation . . . ." *V.I. Water & Power Auth. v. GE Int'l*, 561 F. App'x 131, 134 (3d Cir. 2014). Given this, and Judge Farbiarz's order denying NAR's motion to the extent it seeks dismissal, this case will remain stayed pending completion of arbitration.