UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DEBORAH A. GLOVER,**  *Plaintiff,*  v.  **FEIN, SUCH, KAHN & SHEPARD, P.C.,** *et al.*,  *Defendants.* | Civil Action No. 23-cv-22282 (MEF) (CLW)  OPINION |

**CATHY L. WALDOR, U.S.M.J.**

## I. INTRODUCTION

This matter is before the Court on the motion of Defendant Fein, Such, Kahn & Shepard, P.C.'s ("FSKS") seeking to compel arbitration. (ECF No. 39). In accordance with Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court resolves Defendant's application without oral argument. Upon careful consideration of the record for this matter, Defendant's Motion is **DENIED**.

## II. BACKGROUND

The Court assumes familiarity with the facts and procedural history underlying this matter – discussed in full in the Court's July 24, 2024 Opinion and Order, (ECF Nos. 26 and 27), granting Defendant North American Recovery, Inc.'s ("NAR") motion to compel arbitration – and therefore will not recite them at length here. Briefly stated, in 2014 Merrick Bank issued Plaintiff a credit card, upon which Plaintiff later defaulted. Merrick Bank assigned Plaintiff's account to NAR, a collection agency, who obtained a default judgment against Plaintiff. The present action centers

1

on the allegation that Defendants in October 2022 sent Plaintiff a letter purporting to collect the same debt that had already been paid through satisfaction of the default judgment. NAR filed a motion to compel arbitration on December 29, 2023. (ECF No. 6). NAR asserted that the Merrick Bank cardholder agreement (the "Agreement"), which governed Plaintiff's account, contained an arbitration clause providing that the card applicant agrees to arbitrate all disputes regarding the Agreement or account. The Court granted NAR's motion on July 24, 2024, and stayed the matter pending resolution of the arbitration proceedings between Plaintiff and NAR. (ECF Nos. 26 and 27). Plaintiff does not oppose enforcement of the arbitration clause in the Agreement as to NAR.

On February 25, 2025, the Court denied Plaintiff's motion for reconsideration, (ECF No. 32), with respect to lifting the stay on this matter pending resolution of the arbitration proceedings between Plaintiff and NAR, and clarified that the Order compelling arbitration of Plaintiff's claims against NAR applies only to Plaintiff's claims against NAR. (Feb. 25, 2025 Opinion at 4, ECF No. 37). However, the Court noted that both Plaintiff and FSKS raised whether the arbitration clause in the Agreement also requires arbitration as to Plaintiff's claims against FSKS, and directed the parties to submit additional briefing on the issue. (*Id.* at 5-6). On March 31, 2025, FSKS filed the motion at hand, seeking to also compel arbitration of Plaintiff's claims against it (the "Motion"). Plaintiff filed its opposition on April 21, 2025. (ECF No. 43). For the purposes of efficient case management and judicial economy, the Court stayed the previously ordered arbitration between NAR and Plaintiff until this Motion is resolved. (April 4, 2025 Text Order, ECF No. 41).

FSKS asserts that the arbitration clause which NAR relied upon in its successful motion to compel arbitration also applies to Plaintiff's claims against it, and "adopts the same arguments made by NAR." (Def. Motion at 1, ECF No. 39-1). NAR's motion to compel arbitration "was

2

based upon the terms of the Merrick Bank account agreement which provided for disputes to be arbitrated.[1]  (*Id.* at 2).  FSKS submits that while it is not a party to the Agreement, it "get[s] the benefit of the same arbitration clause invoked by NAR due to other language in the arbitration paragraph of the account agreement." (*Id.*).  Specifically, the arbitration clause provides:

> This agreement to arbitrate claims include all controversies and claims of any kind between us.  ***It also includes any disputes you have with our agents, contractors, employees, officers or assignees,*** any merchants with whom you used the Account, any credit reporting agencies to whom we report the Account or any other third party that has been involved or becomes involved with … your Account.

(*Id.*).  FSKS argues that "the arbitration clause is extended by the account agreement to non-parties, such as agents, who have some privity with the card issuer (or its assignee)." (*Id.*).  Therefore, FSKS asserts that it was "substituted into the underlying collection case as attorney for NAR, the assignee of the original Plaintiff Merrick Bank," and by virtue of that relationship became NAR's agent "at the time it was substituted into the underlying collection case as counsel for NAR." (*Id.* at 2-3).  Accordingly, FSKS alleges that as NAR's agent, it is "entitled to invoke the arbitration clause in the account agreement when it was named by Plaintiff as a Defendant in two complaints based upon its alleged actions as attorney for NAR in the Glover collection case." (*Id.* at 3).  FSKS argues that Plaintiff is not only "contractually obligated to arbitrate its claims against FSKS," but also that it makes "perfect sense" to do so as the claims "involve identical facts and issues" as the claims against NAR.  (*Id.*).  Further, FSKS submits that "[t]o allow the claims against [it] to proceed in the US District Court while the rest of the case is arbitrated would be a waste of judicial resources and creates the possibility of inconsistent findings of fact and results which would

---

[1] Bryan Olsen, a V.P. of Merrick Bank, stated that the account agreement for Plaintiff's credit card provides that the card applicant agrees to arbitrate any and all disputes regarding the cardholder agreement or the account.  (Decl. of Bryan Olsen ¶ 21, ECF No. 6-3).

3

certainly lead to additional litigation that would not be necessary if all claims against all parties were arbitrated at the same time before the same tribunal." (*Id.*).

Plaintiff opposes FSKS' Motion for four reasons. (Pl. Opp. at 5-6, ECF No. 43). First, Plaintiff submits that FSKS' right to compel arbitration expired. (*Id.*). Second, Plaintiff argues that the Agreement is illusory and unenforceable. (*Id.*). Third, Plaintiff asserts that the prejudgment contract merged into the Court's judgment and therefore no longer exists. (*Id.*). Finally, Plaintiff argues that the claims based on Defendants' attempted collection of a satisfied court judgment do not arise from the prejudgment contract.

### III.  LEGAL STANDARD

Under the Federal Arbitration Act (the "FAA"), binding arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "If a valid arbitration clause exists and the dispute falls within the substantive scope of that clause, [a court] must compel the parties to arbitrate the dispute." *Microbilt Corp. v. Chex Sys. (In re Microbilt Corp.)*, 588 F. App'x 179, 180 (3d Cir. 2014) (citing cases). The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[C]ourts apply a 'presumption of arbitrability' when construing the scope of arbitration clauses", *Lloyd v. MBNA Am. Bank, N.A.*, 27 F. App'x 82, 85 (3d Cir. 2002), and "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000) (citing cases).

The Court has inherent authority and broad latitude to stay actions pending arbitration "and it is appropriate to do so when it is in the interest of judicial economy." *Marinelli v. Citibank, N.A.*,

4

No. 22-cv-7023 (ES), 2023 WL 6558498, at *2 (D.N.J. July 25, 2023) (citations omitted). It is also appropriate to stay an action pending arbitration "when there is a significant overlap of issues between the claim subject to arbitration and the claim before the court." *Id.*

IV. **ANALYSIS**

Plaintiff objects to FSKS' request to compel arbitration on four grounds: (1) FSKS' right to compel arbitration expired; (2) the Agreement is illusory and unenforceable; (3) the Agreement was merged into the judgment, thus extinguishing FSKS' arbitration rights contained in the Agreement; and (4) the scope of the arbitration provision FSKS relies upon does not encompass court judgments.

On their face, Plaintiff's claims against FSKS appear to fall within the scope of the existing and valid arbitration agreement between Plaintiff and NAR. However, the plain language of the arbitration provision in the Agreement required FSKS to make a demand for arbitration "within 90 days following the service of a complaint … or any answer thereto." (Agreement ¶ 24, ECF No. 6-7). Therefore, the Court must deny FSKS' Motion, as its right to compel arbitration under the Agreement expired. The Court will further address each of Plaintiff's arguments in turn.

  a. **Expiration of Right to Compel Arbitration**

Pursuant to the plain language of the Agreement, FSKS' right to compel arbitration has expired. The Agreement explicitly states that "any demand for arbitration that is made after a lawsuit or other legal proceeding has begun must be made within 90 days following the service of a complaint, third-party complaint, cross-claim or counterclaim or any answer thereto or any amendment to any of the above." (Agreement ¶ 24, ECF No. 6-7). FSKS filed its Answer and

5

Cross-Claim to the Complaint on March 5, 2024. (ECF No. 14).² No party has filed an amended pleading since then. Accordingly, any demand for arbitration under the Agreement must have been made 90 days after March 5, 2024.³ FSKS filed this Motion on March 31, 2025, more than a year since filing its Answer and close to nine months after its contractual deadline to compel arbitration passed. Therefore, according to the plain language of the arbitration provision – which FSKS did not address or dispute in its Motion – the Court must deny the Motion.

### b. Illusory and unenforceable

Plaintiff next argues that the Agreement is unenforceable because it is based upon an illusory promise," *i.e.* one "in which the promisor does not bind himself." (Pl. Opp. at 10, ECF No. 43) (citing *Jaworski v. Ernst & Young US LLP*, 441 N.J. Super. 464, 477 (App. Div. 2015) (quoting Black's Law Dictionary 1213 (6th ed. 1990)). In other words, an illusory promise is a "promise by which [its] terms make[s] performance entirely optional with the promisor whatever may happen, or whatever course of conduct in other respects he may pursue." *Jaworski*, 441 N.J. Super at 477 (quoting *Bryant v. City of Atl. City,* 309 N.J. Super. 596, 621, 707 A.2d 1072 (App. Div. 1998)). "Under general principles of contract law, an agreement, including one to arbitrate disputes, based only upon an illusory promise is unenforceable." *Jaworski*, 441 N.J. Super. at 477.

---

² FSKS stated twenty-five affirmative defenses in its Answer, the seventh asserting that "[t]his matter is subject to mandatory arbitration." For the avoidance of doubt, the Court does not view this affirmative defense as a formal demand for arbitration. The plain language of the Agreement requires the party wishing to initiate arbitration to make a "demand for arbitration." (Agreement ¶ 24, ECF No. 6-7). The other Defendant, NAR, filed a motion to compel arbitration, (ECF No. 6), on December 29, 2023 – more than two months before FSKS filed its Answer. FSKS did not seek to join NAR's motion or file its own motion to compel arbitration until the Court ordered additional briefing on February 25, 2025. (ECF No. 38).

³ On October 7, 2024, FSKS stated in its opposition to Plaintiff's motion for reconsideration that it "agree[s] to arbitration of the Plaintiff's claims against it in this matter" and that it is "contemplated and anticipated that the claims against both [NAR and FSKS] will be arbitrated." (ECF No. 36). The Court does not construe this assertion as a formal demand for arbitration.

6

"Generally, however, courts should seek to avoid interpreting a contract such that it is deemed illusory." *Id.*

Plaintiff cites the following language in the Agreement to contend that, because the promisor "could have changed the terms of the arbitration agreement or the [Agreement] in general," the arbitration clause in the Agreement "is unenforceable and no contract exists" (*Id.*):

> We may change the terms of this Agreement or the Pricing Appendix at any time. We may change or remove any of the terms and conditions of, or add new terms or conditions to, this Agreement or the Pricing Appendix, including without limitation by increasing existing fees, margins and rates, and adding new fees and charges, whether or not the Account has been cancelled, suspended or closed to new Account transactions…

(Agreement ¶ 1, ECF No. 6-7). However, an arbitration agreement is only illusory if one party has an "unfettered right to alter the arbitration agreement's existence or its scope." *Crump v. MetaSource Acquisitions, LLC*, 373 F. Supp. 3d 540 (E.D. Pa 2019) (quoting *Dumais v. Am. Golf. Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2022) (collecting cases)). Here, other language in the Agreement contradicts Plaintiff's assertion that the promisor could unilaterally modify the arbitration provision and Plaintiff's rights at any time. In particular, under the plain language of the Agreement, Plaintiff is not automatically required to arbitrate any disputes arising under the Agreement. The second sentence of the arbitration clause provides that a cardholder may reject the agreement to arbitrate, and the language is repeated, capitalized, and bolded again in this section for emphasis: "**YOU HAVE THE RIGHT TO REJECT THIS AGREEMENT TO ARBITRATE, BUT YOU MUST EXERCISE THIS RIGHT PROMPTLY. If you do not wish to be bound by this agreement to arbitrate, you must notify us in writing within 60 days after the date your Account is opened.**" (*Id.* ¶ 24). *Jaworski* supports the proposition that an amendment provision is not illusory when a plaintiff could enshrine his rights under the arbitration

7

provision by providing written notice to the defendant of his intention to arbitrate. (Pl. Opp at 11, ECF No. 43); *Jaworski*, 441 N.J. Super at 477–78.

Similarly, although the promisor here has a general right to amend the terms of the Agreement – which Plaintiff explicitly agreed to "by signing the card or using it to make a purchase" (Agreement ¶ 1, ECF No. 6-7) – a cardholder also has the right to provide written notice regarding his or her intent to be bound by the arbitration provision. Plaintiff hypothetically argues that the promisor *could* unilaterally change the terms of the arbitration provision without providing notice to the cardholder, such that Plaintiff would no longer have a right to decline arbitration under the Agreement. However, this argument is unsupported by the facts at hand (nor is there any indication that the promisor would not provide notice to Plaintiff of any such changes as required under applicable law). Thus, the Court will not interpret the Agreement as "illusory" based on a situation that has yet to occur. The plain meaning of the Agreement governing Plaintiff's claims is clear that, while the promisor may change or amend the terms and conditions in the Agreement, Plaintiff currently has the right to provide written notice regarding its intent to arbitrate (or not). Therefore, the Court rejects Plaintiff's assertion that the Agreement is illusory and unenforceable.

   c. **Merger**

Plaintiff's third argument grows from the doctrine of merger. She contends FSKS' right to arbitrate the present claims was extinguished when NAR obtained a judgment against her. In presenting this argument, Plaintiff copies and pastes large swathes of her opposition brief to NAR's motion to compel arbitration, (ECF No. 10 at 11-13), where she raised the same argument – namely, that under the merger doctrine, "[w]hen a claim on a contract is reduced to judgment, the contract between the parties is voluntarily surrendered and canceled by merger in the judgment

8

and ceases to exist." (Pl. Opp at 17, ECF No. 43) (quoting 46 Am. Jur. 2d Judgments § 438 (2021)). After such a merger, therefore, "the prevailing party has only those rights as are set forth in the judgment itself and the contract no longer serves any purpose except as evidence supporting the judgment." (*Id.*) (quoting Am. Jur. 2d).

This Court previously held that Plaintiff's argument "rests on a misconstruction of the merger doctrine," "finds little support in federal case law," and that "federal courts consistently reject the exact same argument Glover posits here." (July 24, 2024 Opinion at 5-6, ECF No. 26). Therefore, for the same reasons previously stated, (*see id.* at 4-6), the Court rejects Plaintiff's argument that it should not compel arbitration because FSKS' Agreement-vested arbitration rights were extinguished by way of the Agreement's merger into the judgment.

### d. Scope of Arbitration Agreement

Last, Plaintiff asserts that because the Agreement does not expressly mention court judgments, this dispute falls outside of the Agreement's scope. (Pl. Opp. at 19, ECF No. 43). In presenting this argument, Plaintiff again copies and pastes, verbatim, from her opposition brief to NAR's motion to compel arbitration. (ECF No. 10 at 13-14). This Court previously found Plaintiff's argument that the instant dispute does not fall within the scope of the Agreement to be "a non-starter" and "meritless." (July 24, 2024 Opinion at 7-8, ECF No. 26). Therefore, the argument fails for the same reasons previously stated. (*Id.*).

### V. CONCLUSION

The Court finds no merit to Plaintiff's second, third, and fourth objections to FSKS' Motion. However, based on the plain language of the Agreement, FSKS' right to compel arbitration expired 90 days after FSKS filed its Answer and Cross-Claim on March 5, 2024. Therefore, FSKS' Motion to Compel Arbitration, (ECF No. 39), must be **DENIED**.

Nonetheless, given the existence of a valid and enforceable arbitration agreement between Plaintiff and the other Defendant in this matter, NAR, it is in the interest of justice and judicial efficiency for the case to remain stayed pending resolution of the arbitration proceedings between Plaintiff and NAR. The Court has inherent authority and broad latitude to stay actions pending arbitration "and it is appropriate to do so when it is in the interest of judicial economy." *Marinelli v. Citibank, N.A.*, No. 22-cv-7023 (ES), 2023 WL 6558498, at *2 (D.N.J. July 25, 2023) (citations omitted). It is also appropriate to stay an action pending arbitration "when there is a significant overlap of issues between the claim subject to arbitration and the claim before the court." *Id.* Here, "[t]o allow the claims against FSKS to proceed in the US District Court while the rest of the case is arbitrated would be a waste of judicial resources and creates the possibility of inconsistent findings of fact and results." (Def. Motion at 3, ECF No. 39-1). It makes little sense to have the instant lawsuit against FSKS – a case involving identical facts and issues as the claims against NAR – proceed until Plaintiff's arbitration with NAR has been resolved. Accordingly, this case shall remain stayed pending resolution of the arbitration proceedings between Plaintiff and NAR.

An appropriate order follows.

**Dated: May 16, 2025**

*s/ Cathy L. Waldor*
**Hon. Cathy L. Waldor, U.S.M.J.**

cc: Hon. Michael E. Farbiarz, U.S.D.J.